# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| ROY THOMAS MOULD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAINCARE HOLDINGS, INC.; RANDY LUBINSKY, and MARK SZPORKA<br>Defendants. | CASE NO.:<br>6-06-CV-362-ORG-28DAB<br><br>**F I L E D**<br>3/21/06<br>Date                              Time<br>CLERK, U.S. DISTRICT COURT<br>MIDDLE DISTRICT OF FLORIDA<br>ORLANDO, FLORIDA |

## CLASS ACTION COMPLAINT

Plaintiff, ROY THOMAS MOULD ("Plaintiff"), alleges the following for his Complaint in the above-captioned matter. Plaintiff so alleges individually and on behalf of all persons and entities (the "Class") who purchased or otherwise acquired the common stock of PainCare Holdings, Inc. ("PainCare" or the "Company"), between August 27, 2002 and March 15, 2006, inclusive (the "Class Period"). The allegations contained herein are made upon information and belief, except as to the allegations about Plaintiff and his counsel, which are made upon personal knowledge. Plaintiff's information and belief are based, among other things, on investigations made by and through his attorneys. Such investigation included, but has not been limited to, the review and analysis of: (a) filings made by PainCare with the United States Securities and Exchange Commission (the "SEC"); (b) press releases issued by the Company; (c) newspaper, magazine, and other periodical articles relating to PainCare and the allegations contained therein; and (d) other matters of public record.

## NATURE OF THE ACTION

1.      This is a class action on behalf of all purchasers of the common stock of

PainCare between August 27, 2002 and March 15, 2006, inclusive, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Based in Orlando, Florida, PainCare was founded in 2000 and describes itself as a leading provider of cost-effective, high-tech pain relief.  The Company has established and is aggressively expanding a highly specialized, professional health services organization that is comprised of neuro- and orthopedic surgeons, physiatrists and pain management specialists. PainCare's medical professionals offer pain sufferers a wide range of modalities including interventional pain management, minimally invasive spine surgery and orthopedic rehabilitation.

3.      Throughout the Class Period, the defendants overstated and exaggerated PainCare's financial health.  In particular, PainCare went on a buying spree, growing its business by corporate acquisition, but accounting for such acquisitions in violation of Generally Accepted Accounting Principles ("GAAP").  The Company overstated its earnings by failing to comply with GAAP in recording its noncash growth.  On March 15, 2006, the last day of the Class Period, the Company announced that it would have to restate its financial figures going back to 2000 – to its founding – in order to to adjust for the improper accounting of its corporate acquisitions.

4.      The Company's stock sunk to new lows on the news, having recently closed at $2.50 per share – down from its Class Period high of $5.25 per share.  In just the first day of trading following the announced restatement, PainCare's stock dropped 12.6%, on extremely heavy volume, down over 50% from its Class Period high.  As a result, investors have lost millions of dollars as a result of the acts and omissions complained of herein.

2

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to: (a) Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and (b) 28 U.S.C. §§ 1331 and 1337.

6.      This action arises under and pursuant to: (a) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); (b) Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and (c) Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

7.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8.      In furtherance of and in connection with the acts alleged herein, Defendants (as defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephonic communications, the Internet, and the facilities of the American Stock Exchange, a national securities exchange.

## PARTIES

9.      Plaintiff purchased the Company's securities during the Class Period, as set forth in the attached Certification, and was damaged thereby.  Plaintiff resides in Hennepin County, Minnesota.

10.      Defendant PainCare, Inc., is a corporation organized under the laws of the state of Florida.  It maintains its principal place of business at 1030 N. Orange Avenue, Suite 105, Orlando, Florida 32801.  PainCare common stock trades on the American Stock Exchange, a national securities exchange headquartered in New York.

11.      At all relevant times, Randy Lubinsky, was Chief Executive Officer and Director of the Company.

3

12.    At all relevant times, Mark Szpoka, was Chief Financial Officer, Secretary and Director of the Company.

## SUBSTANTIVE ALLEGATIONS

13.    Beginning on August 27, 2002 and continued throughout the Class Period until March 15, 2006, the Company issued numerous press releases and filed various filings with the SEC that were materially false and misleading.  Throughout the Class Period the Company understated expenses and overstated earnings which served to artificially inflate the value of the Company's stock.  As a result of these false and misleading statements, the Company was forced to restate its earnings, going all the way back to 2000.

*False And Misleading Class Period Statements And Omissions*

14.    The Class Period begins on August 27, 2002 when the Company issued a press release announcing recent financial highlights and developments.  In particular, the Company stated that the outlook was positive and detailed the growth by acquisition business model that would be become the cornerstone of the Company.  The press release stated in relevant part:

> During the past eighteen months, the Company has completed the merger of the two platform physician practices and opened five MedX-Direct orthopedic rehabilitation centers. Management's objective going forward is to complete three acquisitions and open twelve MedX-Direct centers per year.  Based on the financial performance of the Company to date and the successful execution of this growth plan, management believes that the Company could achieve annual revenues of $45 million and net income of $7 million within the next three years.

> While the capital for the Company's growth plans has not been secured, based on recent discussions with funding sources, management is optimistic that the capital needed to double the size of the Company can be obtained.

15.    On August 27, 2002, the Company's stock nearly doubled from its 35 cents per share closing price from the previous day and was valued at over $1 by September 4.  During the next

4

several years, the Company continued to issue press releases and financial statements that artificially inflated the value of its stock and used that overvalued stock as currency to grow by acquisition.

16.     As part of its relentless buying spree, the Company issued press releases, filed with the SEC on Forms 8-K and signed by defendants Lubinsky and Szpoka, announcing new corporate acquisitions.   In 2005 until the end of the Class Period, the Company made no less than fourteen such announcements on the following dates: December 27, 2004, April 14, 2005, May 16, 2005, June 27, 2005, August 3, 2005, August 10, 2005, September 19, 2005, September 26, 2005, October 17, 2005, November 4, 2005, January 3, 2006, January 9, 2006, January 23, 2006, February 2, 2006.

17.     During the Class Period, the Company also issued press releases and various filings with the SEC on Forms 10-Q and 10-K, detailing the Company's financial condition. According to the Company, those financials were in compliance with GAAP.

18.     Those press releases and public filings were false and misleading because they did not comply with GAAP when issued.

*The Truth Is Revealed*

19.     On March 15, 2006, the Company announced that it would not be filing an annual report on Form 10-K for the fiscal year 2005. The Company issued a press release that day stating that its financial filings for the years 2000 through 2004 and the first three quarters of 2005 were not in compliance with GAAP and would have to be restated.  The Company stated in relevant part:

> Orlando, FL – (PR NEWSWIRE) – March 15, 2006 – PainCare Holdings, Inc. (AMEX:PRZ), one of the nation's leading providers of pain-focused medical and surgical solutions and services, today announced that upon the recommendation of management, and after consulting with its former and present independent auditors and other professional accounting and valuation specialists, PainCare's Audit Committee determined that the Company will restate its historical financial statements for the years ended December 31, 2000, December 31, 2001, December

31, 2002, December 31, 2003 and December 31, 2004, and the quarters ended March 31, 2005, June 30, 2005 and September 30, 2005.

According to Mark Szporka, Chief Financial Officer of PainCare, "Since the founding of PainCare in 2000, we have utilized many professional advisors and financial experts to assist us in preparing our financial statements in accordance with Generally Accepted Accounting Principles (GAAP). But as investors are aware, GAAP principles are not set in stone, but rather evolve over time. Accordingly, certain of our accounting policies that were considered by management and our advisors to reflect best industry practices over the last six years have now been superceded by new interpretations. As a result of this evolving interpretation of certain accounting rules, we are required to restate our historical financial results to account for certain non-cash expenses associated with our option plans, convertible debentures, warrants, and acquired practice intangibles. While none of these expenses are related to our provision of pain management services, we are committed to the highest level of financial reporting standards and the integrity of our financial statements."

The Audit Committee's decision to concur with management's recommendations to restate was made following a review of the Company's historical financial statements by the Corporation Finance Division of the U.S. Securities and Exchange Commission (SEC). PainCare determined that as the result of its discussions with the SEC staff concerning issues related to the accounting for convertible term notes and certain freestanding and embedded derivates related to shares of PainCare's common stock issued in several private placement transactions, PainCare will restate its consolidated financial statements for the years ended December 31, 2000, December 31, 2001, December 31, 2002, December 31, 2003 and December 31, 2004 and the quarters ended March 31, 2005, June 30, 2005 and September 30, 2005. In addition, the review has also resulted in adjustments related to the recognition of goodwill and other intangibles, as well as the accounting treatment of option grants issued under the Company's 2000 and 2001 stock option plans. PainCare's provision for income taxes, and its recording of deferred taxes, will also be restated for each period. Specific details related to the restatement issues can be found in the associated Form 8-K filed with the SEC today.

Until PainCare has restated and reissued its results for the applicable periods, investors and other users of PainCare's SEC filings are cautioned not to rely on the Company's financial statements for the fiscal years ended December 31, 2000, December 31, 2001, December 31, 2002, December 31, 2003 and December 31, 2004 and the quarters ended March 31, 2005, June 30, 2005 and September 30, 2005, to the extent such former and current financial statements are affected by the accounting issues described in the 8-K filing.

20.     According to the Company's March 15, announcement, PainCare estimates that the total restatement for the years 2000 to 2004 would be a net negative $23.5 million to earnings. This is significant since the Company's previously reported earnings during that period was $7.4 million.

21.     Additionally, the fact that these restatements relate to "noncash" adjustments is irrelevant for a company such as PainCare that depends on acquisitions for growth and is thus not generating cash. For a Company such as PainCare, a noncash adjustment to earnings is critical to its balance sheet since its balance sheet is dependant on noncash assets.

22.     In the wake of the disclosure of the foregoing items, shares in PainCare which had already been in decline, dropped by 12.5%, on very heavy trading, to a closing price of $2.50 per share. Within one week of the corrective disclosure, the Company's stock price sank to below $2.00. The price of PainCare stock, which reached a Class Period high of $5.25 per share, has now lost over 50% of its value.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

23.     At all relevant times, the market for PainCare common stock was an efficient market for the following reasons, among others:

      a.      PainCare common stock was listed and actively traded, on the AMEX, a highly efficient market;

      b.      As a regulated issuer, the Company filed periodic public reports with the SEC;

      c.      PainCare stock was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force

7

and certain customers of their respective brokerage firms.  Each of these

reports was publicly available and entered the public marketplace;

d.      PainCare regularly issued press releases which were carried by national news

wires.  Each of these releases was publicly available and entered the public

marketplace.

24.     As a result, the market for PainCare securities promptly digested current information

with respect to the Company from all publicly-available sources and reflected such information in

the Company's stock price.  Under these circumstances, all purchasers of PainCare common stock

during the Class Period suffered similar injury through their purchase of stock at artificially inflated

prices and a presumption of reliance applies.

## NO SAFE HARBOR

25.     The statutory safe harbor provided for forward-looking statements under certain

circumstances does not apply to any of the allegedly false statements pleaded in this complaint.  The

specific statements pleaded herein were not identified as "forward-looking statements" when made.

Nor was it stated with respect to any of the statements forming the basis of this complaint that actual

results "could differ materially from those projected."  To the extent there were any forward-looking

statements, there were no meaningful cautionary statements identifying important factors that could

cause actual results to differ materially from those in the purportedly forward-looking statements.

Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking

statements pleaded herein, Defendants are liable for those false forward-looking statements because

at the time each of those forward-looking was made the particular speaker knew that the particular

forward-looking statement was false, and/or the forward-looking statement was authorized and/or

approved by an executive officer of the Company who knew that those statements were false when made.

## SCIENTER ALLEGATIONS

26.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements, issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding the Company and its business practices, their control over and/or receipt of the Company's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning PainCare were active and culpable participants in the fraudulent scheme alleged herein. Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. This case does not involve allegations of false forward-looking statements or projections but instead involves false statements concerning the Company's business, finances, and operations. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including Defendants.

27.     Defendants engaged in such a scheme to inflate the price of PainCare common stock in order to: (a) protect and enhance their executive positions and the substantial compensation and

9

prestige they obtained thereby; (b) enhance the value of their personal holdings of PainCare common stock and options; (c) to use the Company's stock as currency for further corporate acquisitions; and (d) to successfully impalement a private placement.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rule of Civil Procedure on behalf of a Class, consisting of all persons who purchased or otherwise acquired PainCare common stock between August 27, 2002 and March 15, 2006, inclusive, and who were damaged thereby.  Excluded from the Class are Defendants, members of the immediate family of each of the Defendants, any subsidiary or affiliate of PainCare and the directors, officers, and employees of PainCare or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

29.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States.  Record owners and other members of the Class may be identified from records maintained by the Company and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that custom-arily used in securities class actions.

30.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b.     whether Defendants participated in and pursued the common course of conduct complained of herein;

c.     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition, and prospects of PainCare;

d.     whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance, and prospects of the Company;

e.     whether the market price of PainCare common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.     the extent to which the members of the Class have sustained damages and the proper measure of damages.

11

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## FIRST CLAIM

**(Violations Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants)**

34.     Plaintiff repeats and realleges each and every allegation contained above.

35.     Each of the Defendants: (a) knew or recklessly disregarded material adverse non-public information about the Company's financial results and then existing business conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports, and other public representations of and about PainCare.

36.     During the Class Period, Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37.     Defendants have violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in

acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of PainCare stock during the Class Period.

38.     Plaintiff and the Class have suffered damage in that, in reliance on the integrity of the market, they paid artificially inflated prices for PainCare stock.  Plaintiff and the Class would not have purchased PainCare stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' false and misleading statements.

## SECOND CLAIM

### (Violation Of Section 20(a) Of The Exchange Act
### Against Defendants Lubinsky and Szpoka)

39.     Plaintiff repeats and realleges each and every allegation contained above.

40.     The individual Defendants (Lubinsky and Szpoka) acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act.  By reason of their senior executive and/or Board positions they had the power and authority to cause the Company to engage in the wrongful conduct complained of herein.

41.     By reason of such wrongful conduct, Defendants Lubinsky and Szpoka are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of PainCare stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

1.      Determining that this action is a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

2.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

3.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees ands expert fees; and

4.      Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

Dated: March 20, 2006

Kenneth J. Vianale, Esq. - Trial Counsel
Florida Bar No.: 0169668
Vianale & Vianale LLP
2499 Glades Road
Suite 112
Boca Raton, Florida 33431
Telephone:  (561) 392-4750
Fax: (561) 392-4750
E-mail: kvianale@vianalelaw.com

SHALOV STONE & BONNER LLP
Ralph M. Stone
Thomas G. Ciarlone, Jr.
485 Seventh Avenue, Suite 1000
New York, NY 10018
(212) 239-4340

SARRAF GENTILE LLP
Ronen Sarraf
Joseph Gentile
485 Seventh Avenue, Suite 1005
New York, NY 10018
(212) 868-3610

*Attorneys for Plaintiffs*

15

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, *Roy Thomas Mould*, make this declaration pursuant to the Federal Securities Laws.

1. I seek to serve as plaintiff in the foregoing complaint (the "Complaint").

2. I have reviewed the Complaint prepared by my counsel and authorize its filing.

3. I did not purchase securities in PainCare Holdings, Inc. ("PainCare" or the "Company") at the direction of my counsel in order to participate in any private action arising under the Federal Securities Laws.

4. I am willing to serve as a lead plaintiff either individually or as a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial, if necessary.

5. During the three year period preceding the date of my signing this Certification, I have not served nor sought to serve as a representative party on behalf of a class, except (if any):

6. My transactions in PainCare during the period December 7, 2004 through March 15, 2006 (the "Class Period") are as follows:

| Trade Date | No. of Shares | Price Per Share | Buy or Sell |
|---|---|---|---|
| 10/26/2005 | 2000 | 3.60 | BUY |
| 12/9/2005 | 1000 | 3.74 | BUY |
| 12/15/2005 | 1000 | 3.56 | BUY |
| 1/23/2006 | 1000 | 3.73 | Buy |
| 1/23/2006 | 1000 | 3.44 | Buy |
| 1/25/2006 | 450 | 3.45 | BUY |

Attach additional sheets if necessary

7. I will not accept any payment for serving as a representative party on behalf of the class beyond the pro rata share of any possible recovery, plus reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as approved by the Court.

I declare under penalty of perjury this *17th* day of *MARCH* 2006, that the foregoing is true and correct.

/ Signature /

Name *Roy Thomas Mould*

Address _____

Email _____

Phone _____

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, _Roy Thomas Mould_ , make this declaration pursuant to the Federal Securities Laws.

1.      I seek to serve as plaintiff in the foregoing complaint (the "Complaint").

2.      I have reviewed the Complaint prepared by my counsel and authorize its filing.

3.      I did not purchase securities in PainCare Holdings, Inc. ("PainCare" or the "Company") at the direction of my counsel in order to participate in any private action arising under the Federal Securities Laws.

4.      I am willing to serve as a lead plaintiff either individually or as a group.  A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial, if necessary.

5.      During the three year period preceding the date of my signing this Certification, I have not served nor sought to serve as a representative party on behalf of a class, except (if any):

6.      My transactions in PainCare during the period December 7, 2004 through March 15, 2006 (the "Class Period") are as follows:

| Trade Date | No. of Shares | Price Per Share | Buy or Sell |
|---|---|---|---|
| 02/27/2006 | 1050 | 3.12 | Buy |
| 3/02/2006 | 1500 | 3.00 | Buy |
| 3/08/2006 | 1000 | 2.78 | Buy |
| 3/09/2006 | 500 | 2.72 | Buy |
| 3/10/2006 | 1500 | 2.82 | Buy |

Attach additional sheets if necessary

7.      I will not accept any payment for serving as a representative party on behalf of the class beyond the pro rata share of any possible recovery, plus reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as approved by the Court.

I declare under penalty of perjury this _17th_ day of _MARCH_ 2006, that the foregoing is true and correct.

_____
Signature

Name _Roy Thomas Mould_

Address _____

_____

Email _____

Phone _____

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ROY THOMAS MOULD, on behalf of himself
and all others similarly situated,

## DEFENDANTS

PAINCARE HOLDINGS, INC.
RANDY LUBINSKY, AND MARK SZPORKA

(b) County of Residence of First Listed Plaintiff  Hennepin Cty., MN
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Vianale & Vianale LLP
2499 Glades Road, Suite 112
Boca Raton, Florida 33431
561-392-4750

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☒ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | Injury | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | | Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. Section 78j(b) - Securities Fraud

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE  N/A

DOCKET NUMBER _____

DATE  March 20, 2006

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____