### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:

**PAINCARE HOLDINGS SECURITIES LITIGATION**

> **Lead Case No.  6:06-cv-362-Orl-28DAB**
> **Member Cases: 6:06-cv-363-Orl-28DAB**
> **6:06-cv-373-Orl-28DAB**
> **6:06-cv-374-Orl-28DAB**
> **6:06-cv-379-Orl-28DAB**
> **6:06-cv-396-Orl-28DAB**
> **6:06-cv-417-Orl-28DAB**
> **6:06-cv-490-Orl-28DAB**
> **6:06-cv-512-Orl-28DAB**
> **6:06-cv-587-Orl-28DAB**
> **6:06-cv-676-Orl-28DAB**

_____/

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT (Doc. No. 70)** |
| **FILED:** | **October 20, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## BACKGROUND

This is a putative securities fraud class action seeking relief against PainCare Holdings, Inc. (herein "PainCare" or "the Company") and individual corporate officers and directors (CEO Randy Lubinsky and CFO Mark Szporka).  The matter comes before the Court on motion by Defendants to dismiss the Consolidated Amended Complaint (Doc. No. 65) (herein "CAC") for failure to state a claim upon which relief can be granted, pursuant to Rules9(b) and 12(b)(6), Fed.R.Civ.P., and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.  In addition to their brief, Defendants have filed a Request for Judicial Notice and accompanying exhibits (Doc. No. 72). Lead Plaintiff[1] has filed responsive memoranda to the motion to dismiss and the request for judicial notice (Doc. Nos. 79, 80), and Defendants were permitted to file a reply brief (Doc. No. 83).  As is more specifically set forth below, upon consideration of the allegations of the CAC, the submissions of the parties, and oral argument by counsel, the Court finds that Plaintiff has not sufficiently pled its claims as to these Defendants and accordingly recommends the motion to dismiss be granted.

## THE ALLEGATIONS OF THE COMPLAINT

For purposes of a motion to dismiss, the Court looks to the facts as alleged by Plaintiff.

Plaintiff purchased the common stock of PainCare during the Class Period.[2] CAC at ¶ 11. PainCare is a Florida corporation which, through its subsidiaries, provides pain relief solutions as a specialized, professional health services organization.  CAC at ¶12. At all relevant times, Randy

---

[1]This case has been pled as a class action, though it has yet to be certified as one.  Accordingly the Court refers to "Plaintiff" throughout this Report, as at present there is only the Lead Plaintiff, The Employees' Retirement System of the Government of the Virgin Islands.

[2]Defined as March 24, 2003 through March 15, 2006.

Lubinsky was CEO and Mark Szporka was CFO of PainCare. Both were also members of the Company's Board of Directors. CAC at ¶¶13,14.

Prior to and during the Class Period, PainCare pursued an aggressive growth strategy in which it sought to acquire physician practices and surgical centers in order to "ultimately position PainCare as the world leader in pain management, minimally invasive spine surgery and orthopedic rehabilitation . . ." CAC at ¶ ¶25-27. During the Class Period, the Company completed 22 acquisitions with an aggregate price of over $80 million, using a combination of stock and cash (See ¶¶ 34, 36, 39, 44, 45, 46, 52, 55, 56, 57, 61, 71, 76, 77, 83, 84, 88, 89, 90, 95, 96 & 97).

**The Claimed Fraud**

Plaintiff alleges that PainCare's reported financial results before and during the Class Period were not presented fairly and in accordance with Generally Accepted Accounting Principles ("GAAP") in that the Company's "reported expenses were materially **understated** during the Class Period, and reported net income was materially **overstated** during the Class Period." CAC at ¶3 (emphasis original). Plaintiff asserts that by causing PainCare to issue false financial statements, Defendants enabled the Company to 1) acquire at least twenty companies using artificially inflated common stock and cash received from private placements and credit facilities as consideration; 2) enter into private placement deals whereby the Company received over $33 million in gross proceeds; 3) establish a $30 million credit facility on more favorable terms than it would have secured "if the truth were known"; and 4) complete a public offering of 8 million shares of its common stock whereby it reaped approximately $15.2 million in gross proceeds. CAC at ¶ 4.

The investing public "remained unaware of the accounting improprieties" until an announcement on March 15, 2006, by PainCare that, following discussions with the SEC, it intended

-3-

to restate its financial results for the years 2000 through 2004, and for the first three quarters of 2005. (CAC at ¶¶ 5, 99-100.)  In a Form 8-K filed the same day, PainCare identified three matters of questionable accounting under discussion with the SEC staff:

(a) its existing stock option plans for both employees and non-employees;

(b) practice and surgery center acquisitions, including values recorded for acquired intangible assets and calculation of the consideration; and

(c) expenses relating to derivative financial instruments issued in connection with several private placements. (See CAC at ¶ 100).

On June 1, 2006, PainCare issued restated financial results that lowered net income by approximately $12.7 million for 2003; $7.2 million for 2004; and $16.3 million for the first three quarters of 2005 (*Id.* at ¶5, see also ¶102),[3] and acknowledged "there is an ineffective control environment over the Company's financial reporting." (¶ 104).  In response to the announcement, the Company's stock fell $0.36 per share or 13%, to close on March 16, 2006 at $2.50 per share on unusually heavy trading volume.  During the next three trading days, shares of the Company's stock continued to fall, reaching as low as $1.41 on March 21, 2006. (*Id.* at ¶6).

The CAC asserts that Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 and that Lubinsky and Szporka are also liable as control persons under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

### STANDARD OF REVIEW

---

[3]This is a combined loss.  The CAC alleges that net income, as originally reported, was $2,273,178 for the first quarter in 2005, and restated net income for that quarter was $(27,763,632).  In the second quarter of 2005, the restated net income increased from $3,364,190 to $11,110,828.  The restated net income also increased in the third quarter of 2005 – from $3,473,897 to $9,368,869. (CAC at ¶102).

On a motion to dismiss, this Court accepts as true all well-pleaded allegations of the Consolidated Class Action Complaint, and construes all reasonable inferences therein in the light most favorable to the plaintiff. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 n.2 (11th Cir. 2001) (*citing Byrant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). While the general rule mandates a court limit its inquiry to the four corners of the complaint when ruling on a motion to dismiss, an exception is granted in securities fraud cases to allow a court to take judicial notice (for the purposes of determining what statements the documents contain and not to prove the truth of the documents contents) of relevant public documents required to be filed with the Securities and Exchange Commission ("SEC"), and actually filed. *In re Sunterra Corp. Sec. Litig.*, 199 F.Supp.2d 1308, 1319 (M.D. Fla. 2002) (*quoting Bryant*, 187 F.3d at 1278).

Ordinarily, the standard provides that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In order to survive a motion to dismiss in a securities fraud case, however, a plaintiff must satisfy the requirements of Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting fraud be stated with particularity. *In re: Recoton Corp. Sec. Litig.*, 358 F.Supp.2d 1130, 1138 (M.D. Fla. 2005). A plaintiff satisfies Rule 9(b)'s particularity requirement for fraud when the complaint sets forth "(1) precisely what documents or oral representations were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id*. (*quoting Ziemba*, 256 F.3d at 1202) (*itself quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). "A sufficient

level of factual support for a [10b] claim may be found where the circumstances of the fraud are pled in detail. 'This means the who, what, when, where, and how: the first paragraph of any newspaper story.'"  *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1262 (11th Cir. 2006) (internal citations omitted).

In addition to the particularity pleading requirements required of the plaintiff under Rule 9(b), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), codified at 15 U.S.C. § 78u-4(b), further heightens the pleading burden by requiring that the complaint contain: (1) factual specificity as to the alleged misleading or omitted statements[4] and (2) particular facts raising a "strong inference" that a defendant acted with "the required state of mind."[5]  Failure to meet either of these provisions mandates the dismissal of the Complaint on the motion by any defendant.[6]

With respect to the "required state of mind," this Court has noted that:

> The Eleventh Circuit has held that scienter is satisfied by a showing that the defendant had "an intent to deceive manipulate or defraud" or that the defendant "acted with a severely reckless state of mind." *Bryant*, 187 F.3d at 1282-83. Severe recklessness is " 'limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it.' " *Id.* at 1282 n. 18 (*quoting McDonald v. Alan Bush Brokerage Co.,*

---

[4]Section 78u-4(b)(1) states: In any private action arising under this title in which the plaintiff alleges that the defendant - (A) made an untrue statement of a material fact; or (B) omitted to state a material fact in order to make the statements made, in light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

[5]Section 78(u-4(b)(2) states: In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

[6]The PSLRA mandates that "in any private action arising under this chapter, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met."  15 U.S.C. § 78y-4(b)(3)(A).

863 F.2d 809, 814 (11th Cir. 1989)). While averments of motive and opportunity to commit fraud "may be relevant to a showing of severe recklessness . . . such allegations, without more, are not sufficient to demonstrate the requisite scienter." *Id.* at 1285. Further, the Eleventh Circuit has recently clarified that "scienter must be found with respect to each defendant and with respect to each alleged violation of the statute." *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004).

*In re Recoton,* 358 F.Supp.2d 1130 at 1139.

In addition to pleading fraud with particularity and scienter sufficiently, Plaintiff also has the burden under the Exchange Act of showing that the misrepresentations alleged "caused the loss for which plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).  As stated in *Recoton*:

As explained by the Eleventh Circuit, "loss causation describes 'the link between the defendant's misconduct and the plaintiff's economic loss.' " *Robbins*, 116 F.3d at 1447 (*quoting Rousseff v. E.F. Hutton Co.*, 843 F.2d 1326, 1329 n. 2 (11th Cir. 1988)). A plaintiff ultimately proves loss causation by showing "that the untruth was in some reasonably direct, or proximate, way responsible for his loss." *Id.* (citation and internal quotation omitted). Although a "plaintiff need not show that the defendant's act was the sole and exclusive cause of the injury," the plaintiff "must show that the misrepresentation touches upon the reason for the investment's decline in value." *Id.* (internal quotations omitted). Allegations of artificial price inflation alone do not satisfy the loss causation requirement. *Id.* at 1448.

358 F. Supp. 2d at 1152.

## ANALYSIS

Defendants assert that the CAC must be dismissed because it does not meet the standard for pleading securities fraud as a matter of law in that: 1) Plaintiff does not identify the misrepresentations with sufficient particularity; 2) the allegations of scienter are inadequate; and 3) Plaintiff has failed to properly plead causation.

### The alleged misrepresentations

As set forth above, the circumstances constituting the fraud must be plead with particularity. Here, Plaintiff appears to allege, in essence, that because the financial statements for the years 2000

through the first three quarters of 2005 were restated, therefore the 15 or so public filings and 50 press releases issued during that time period were erroneous and thus, fraudulent misrepresentations. The Court rejects this whole-cloth approach as inconsistent with the required "who, what, when, where, and how" of Rule 9(b).

In its brief, Plaintiff asserts that it has provided the level of specificity required, citing to Allegation 98 of the CAC, which states:

> PainCare's financial statements (a) improperly accounted for certain derivative financial instruments related to shares of PainCare's common stock issued to Midsummer Investments, Islandia, and Laurus in connection with private placement transactions; (b) improperly accounted for physician practice and surgery center acquisitions, including the values recorded for tangible and intangible assets and the calculation of the consideration paid for such acquisitions; and (c) improperly accounted for PainCare's stock option grants to employees and non-employees.

This allegation, however, does not satisfy the standard of pleading "(1) precisely what documents or oral representations were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *In re Recoton,* 358 F. Supp.2d at 1138 (*quoting Ziemba*, 256 F.3d at 1202) *(itself quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1997)). The allegation is not "precise" about which financial statement or statements contain the offending accounting, nor about where in that particular financial statement or statements the matters can be found. Nor does the allegation speak to the manner in which Plaintiff was misled. Rather, if anything, the allegation purports to *summarize* and interpret all of the financial statements collectively, as being inconsistent with the latter restatements, and therefore misrepresentations. This

does not satisfy the standard of pleading that the misstatements (whatever they were) were untrue statements of material fact, made with scienter.

Although Plaintiff is more specific in relying on the various GAAP violations pled (CAC at ¶¶ 106-167), Defendant correctly notes that the CAC merely expounds on the accounting treatments described in the restated financials instead of identifying *exactly* which statements it contends are fraudulent and why they are fraudulent.  In memoranda, Plaintiff also contends: "In addition, the Complaint states that the Individual Defendants' Sarbanes-Oxley certifications, and other statements pertaining to PainCare's internal controls, were false and misleading because: (a) the financial statements violated GAAP and materially overstated net income and understated operating expenses and (b) there were material weaknesses in the Company's internal controls distorting its true financial condition. (¶¶ 29, 30, 32, 37, 40, 41, 51, 54, 63, 69, 74, 80, 86 & 92)." (Doc. No. 79 at 9).  But the allegations referenced by Plaintiff fail to allege that at the time the certifications were filed, the individual Defendants knew of the accounting error or the weaknesses in the Company's controls, and thus the statements were knowingly false when made.

It appears to this Court that Plaintiff has merely substituted a recitation of alleged *evidence* of inaccurate statements for a cogent *pleading* of the alleged fraud.  Indeed, the Court cannot tell whether Plaintiff is alleging that each and every press release or earning statement is itself a separate claim of fraud or whether Plaintiff is asserting some grand, overall scheme of ongoing deception.  Considering that Plaintiff does not allege that the Company failed to set forth its method of accounting, but rather,  that the method of accounting disclosed was later determined to be the wrong method, the importance of identifying the "misrepresentation" with specificity cannot be overstated.  Compare *Bay v. Palmisano*, 2002 WL 31415713 (E.D. La., Oct. 24, 2002) ( where defendant

"repeatedly and precisely disclosed to investors its method for recognizing revenue" even if accounting methods violated GAAP, plaintiff failed to allege sufficient facts to support a reasonable belief that financial statements were false and misleading.)  Identification of the specific claim is essential in that Plaintiff must also show the manner in which the misrepresentation misled Plaintiff and what the Defendant obtained as a consequence of the alleged fraud.  Absent such specificity, the Complaint cannot stand.

### Scienter

As set forth above, in this circuit, scienter is satisfied by a showing that the defendant had "an intent to deceive manipulate or defraud" or that the defendant "acted with a severely reckless state of mind." *Bryant*, 187 F.3d at 1282-83.  Severe recklessness is " 'limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it.' " *Id.* at 1282 n. 18 (*quoting McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989)); *see also Garfield, supra.*  While averments of motive and opportunity to commit fraud "may be relevant to a showing of severe recklessness . . . such allegations, without more, are not sufficient to demonstrate the requisite scienter." *Id.* at 1285-6.

As noted at argument and in Plaintiff's papers, Plaintiff contends that the Court can infer scienter for present purposes in that: 1) the Company restated *all* of its earnings; 2) the Company, at all relevant times, was in acquisition mode; 3) the Company's alleged explanation for restating its financials (that it was due to "evolving" GAAP interpretations) was false; and 4) the individual Defendants' positions with the Company shows that they had access to Company information and

"knew or should have known" that the Company was engaging in improper accounting.  The Court is not persuaded.

Plaintiff relies on *Zuckerman v. Smart Choice Automotive Group, Inc.,* 2000 WL 33996254 (M.D. Fla. 2000) for support of its contention that the magnitude of accounting misstatements is indicative of severe recklessness.  The case at bar, however, is far different from the *Zuckerman* case. In *Zuckerman,* the earnings discrepancy arose following a "systematic practice of falsifying customer information submitted to the Company's credit review and approval division" which included forging documents; recording down payments as having been paid that were not, in fact, paid; and misrepresenting the true cost of vehicles. *Id.*  Moreover, there were allegations that the CFO failed to report that a subsidiary had been sold, and another subsidiary was falsely reported to have engaged in revenue producing activities when, in fact, this subsidiary had no operations.  Thus, *Zuckerman* involved a failure to disclose known misdeeds and a purposeful withholding or misstating of known information.  By contrast, here there are no such allegations of corporate wrongdoing and cover-up. No smoking guns are alleged, no corporate conspiracy is pled.

This is a relatively simple financial restatement case.  Unlike *Zuckerman*, the corporate statements of public record set forth in the request for judicial notice in this case show that PainCare at all relevant times *disclosed* its method of accounting in the financial statements it issued and consistently used the same disclosed method of accounting, prior to the restatement.  Moreover, the Company, in compliance with the applicable rules and regulations, employed outside auditors during the Class Period and the auditors *certified* the financial statements, which included the since withdrawn accounting methodology.  To the extent the flawed methodology is the misrepresentation sued upon, it was set forth and disclosed to the world.  The fact that the accounting error, when

discovered and corrected by Defendant, resulted in a massive restatement of earnings does not serve as an indicium of fraud under these circumstances; because the disclosed methodology was used consistently, the restatement necessarily affected all of the prior financial statements.  While it is true, generally, that the magnitude and significance of a restatement of revenue plays a role in determining scienter, *In re Microstrategy, Inc. Securities Litigation,* 115 F. Supp.2d 620 (E.D. Va. 2000), an inference of fraud is not contingent upon the loss of a particular dollar amount, and a mistake, even a large mistake, is not converted into fraud merely upon the reaching of a certain financial threshold. While the impact of the error here was significant, absent any other indicia of fraud (discussed below), the size of the loss alone is insufficient to establish scienter.

Nor is the Court convinced that the fact that the business was in acquisition mode shows scienter.  As noted by Defendant at argument, there is no allegation that the assets the Company acquired were inappropriate acquisitions or were undervalued.  Indeed, the Court is hard-pressed to see the damage done to shareholders by the alleged fruits of the wrongdoing, as pled: "Defendants, by causing PainCare to issue false financial statements, enabled the Company to (I) acquire at least twenty companies using artificially inflated common stock and cash received from private placements and credit facilities as consideration; (ii) enter into private placement deals whereby the Company received over $33 million in gross proceeds; (iii) establish a $30 million credit facility on more favorable terms than it would have secured if the truth were known; and (iv) complete a public offering of 8 million shares of its common stock whereby it reaped approximately $15.2 million in

gross proceeds." CAC at ¶ 4.[7]  Again, this is not a case where insider trading or other corporate raiding is alleged.

Indeed, as pointed out by Defendant, the CAC is notable for what it *does not* allege.  There is no allegation that the Company lied to or misled its accountants.  There is no confidential informant, suppressed internal memorandum, or allegations of clandestine "cooking of the books."  No conspiracy to withhold known contrary information is alleged.  In short, there is nothing to indicate that the restatement, massive though it was, was due to anything more than an accounting error.  To the extent Plaintiff points to the violations of GAAP, such violations are themselves insufficient to show scienter.  *In re Sunterra*, 199 F.Supp.2d at 1333; *see also Garfield, supra.*  Moreover, the Court is not persuaded by the alleged "falsity" of the reason provided by Defendant for the restatement.  Plaintiff alleges no facts (as opposed to bald conclusions) sufficient to support an inference that the Company's disclosed reason for the restatement (that it was due to "evolving" GAAP interpretations) was a pretext.  Even if Plaintiff is correct in that the GAAP principles were *not* evolving, Plaintiff pleads nothing to support an inference that the Company's stated belief to the contrary was anything other than merely wrong.[8]  This is especially true, given the fact that the accounting methodology was always publicly disclosed, the methodology was used for years without incident, and outside auditors reviewed and certified the financial statements.  *Compare Andropolis v. Red Robin Gourmet Burgers, Inc.,*  2007 WL 8729 (D. Colo. Jan. 2, 2007) (granting motion to

---

[7]Of course, this is not to condone purchasing assets with artificially inflated stock; rather, the observation is that, if truly reflects a scheme by the Defendants, the injury is not to the corporate shareholders, who acquired an ostensibly valuable asset.

[8]Indeed, the Company points out that the results of the restatement were not one-sided, and as a result of the restatement, the Company's net income actually *increased* for the quarter ending June 30, 2005, and for the quarter ending September 30, 2005 (CAC at ¶102).  Plaintiff offers no explanation for why a company intent on fraud would continue to use a methodology that significantly *understated* net income for a six month period of time.

dismiss, noting, among other things, "Plaintiff does not allege the existence of a single written document showing that Red Robin was actually aware that it was utilizing improper accounting procedures that threatened the financial viability of the company; nor does Plaintiff allege sufficient facts to show that Red Robin's accounting failures were so obvious as to support an inference that the Company harbored an intent to artificially inflate its financial forecast.")

Finally, scienter must be pled against *each* defendant.  *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004).  The allegations against the CFO and CEO are that the officers had a motive to defraud (as their bonuses were tied to Company performance) and, as experienced businessmen with access to the financial records, they knew "or should have known" that the Company was engaging in improper accounting.  Absent from the CAC, however, are any allegations as to *how* or *why* the officers should have known.[9]  Indeed, considering that there is no allegation of insider trading or other unreported improprieties or red flags, there is nothing to transform this case into anything other than, at most, negligence or corporate mismanagement.   In this circuit, fecklessness is not recklessness.

Taken together and construing all reasonable inferences in Plaintiff's favor,[10] this complaint fails to set forth sufficient allegations of severe recklessness, essential to plead scienter.

---

[9]At argument, the Court noted that the Company's original outside auditors certified the financial statements and did not catch the error, yet are not defendants here. Plaintiff's counsel downplayed the auditor's responsibility, noting that: "Any auditor can miss it."  If the professionals hired to inspect and certify a publicly traded company's financials can "miss" an accounting error alleged to be blatant and obvious, the inference, absent any allegations of conspiracy or wrongdoing, can only be that the error was not so obvious after all.

[10]Although not determinative here, as the Court finds the allegations, as pled, fail to support any inference (let alone a strong inference) of fraud, the United States Supreme Court has recently granted a petition for writ of certiorari in *Tellabs Inc. v. Makor Issues & Rights Ltd. v. Tellabs, Inc.,* 437 F.3d 588 (7th Cir. 2006), *cert. granted,* 127 S.Ct. 853 (2007), to address the question of how courts should weigh competing inferences in securities litigation under PSLRA.

**Causation**

As set forth above, Plaintiff also has the burden of alleging that the misrepresentations caused the loss or decline in value.  A federal securities fraud claim is actionable "only where [] plaintiffs adequately allege and prove the traditional elements of causation and loss." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  Judge Whittemore sets forth the applicable standard:

> '[T]o establish loss causation, a plaintiff must allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.' *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (internal quotations and citation omitted). . . .
>
> In *Dura*, the U.S. Supreme Court held that loss causation may not be established by simply alleging a stock was purchased at an artificially inflated price. *Dura Pharms., Inc*., 125 S.Ct. at 1631-32, 1634. Rather, to sufficiently plead loss causation, a plaintiff must allege a disclosure or revelation of truth about a defendant's prior misstatement or omission that is in some way connected with a stock price drop. *Id*. at 1634 (motion to dismiss granted based on plaintiffs' failure to plead loss causation where plaintiffs failed to allege that stock prices fell after 'the truth became known').

*In re Teco Energy, Inc. Securities Litigation,* 2006 WL 845161, *2 (M.D. Fla. March 30, 2006).

The Court agrees with the Defendants that loss causation has not been adequately pled, but not for the reasons raised.  While the CAC, read as a whole, alleges that the Company's stock price dropped over several days "when defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market" (CAC at ¶174), it is not apparent that the CAC, fairly read, adequately identifies the prior misrepresentations and fraudulent conduct, as discussed above. In a case such as this, based solely on the aftermath of a financial restatement, the Court cannot fairly evaluate the alleged *effect* of certain misrepresentations, unless it is precisely known what those

-15-

representations where.  In that respect, the hindsight pleading approach adopted by Plaintiff renders an analysis of loss causation impossible.  The CAC should be dismissed.

### Individual Defendants

 As this Court finds that Plaintiff has failed to properly allege a cause of action under Section 10(b) or Rule 10b-5 as to the Company, it follows that a cause of action for "control person" liability under Section 20(a) of the Exchange Act for the same alleged conduct has not been adequately pled against Szporka or Lubinsky.  *See Garfield, supra.*

### CONCLUSION

For the reasons set forth above, the complaint does not meet the applicable pleading requirements and cannot stand.  Although the Court has doubts that, on these facts, Plaintiff will be able to meet these standards consistent with the above analysis, in keeping with the usual liberal practice of allowing amendment, Plaintiff should be allowed another opportunity to assert, if it can, in *specific* fashion, its claim against Defendants, bearing in mind the above findings. The Court **respectfully recommends** that the Court grant the motion to dismiss, with leave to amend.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 26, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

-16-