**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN RE:**

**PAINCARE HOLDINGS SECURITIES LITIGATION**

                                                  **Lead Case No.  6:06-cv-362-Orl-28DAB**

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument on the following motion filed herein:

> **MOTION:** **MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (Doc. No. 109)**
>
> **FILED:** **June 7, 2007**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

### *BACKGROUND*

This is a putative securities fraud class action seeking relief against PainCare Holdings, Inc. (herein "PainCare" or "the Company") and individual corporate officers and directors (CEO Randy Lubinsky and CFO Mark Szporka). The matter comes before the Court on motion by Defendants to dismiss the Amended Consolidated Class Action Complaint (Doc. No. 107) (herein "AC") for failure to state a claim upon which relief can be granted, pursuant to Rules 9(b) and 12(b)(6), Fed.R.Civ.P., and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. The instant complaint was filed following the District Court's dismissal, without prejudice, of the Consolidated Amended Complaint (Doc. No. 65), for failure to meet the applicable pleading standards (Doc. Nos.

101, 106). Lead Plaintiff[1] has filed responsive memoranda to the motion to dismiss (Doc. No. 113), and the Court requested and received supplemental briefing, addressing the impact of the Supreme Court's recent ruling in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 127 S.Ct. 2499, 168 L.Ed. 2d 179 (2007) (Doc. Nos. 114, 118 and 119). As is more specifically set forth below, upon consideration of the allegations of the AC, the submissions of the parties, and oral argument by counsel, the Court finds that Plaintiff has sufficiently pled its claims as to these Defendants and accordingly recommends the motion to dismiss be denied.

### *THE ALLEGATIONS OF THE AMENDED COMPLAINT*

For purposes of a motion to dismiss, the Court looks to the facts as alleged by Plaintiff. In the current complaint, Plaintiff re-alleges the substantive allegations of the prior complaint, which purported to set forth an accounting fraud perpetrated on purchasers of PainCare common stock from March 24, 2003 through March 15, 2006 (the "Class Period"). In summary, Plaintiff alleges that Defendants PainCare Holdings, Inc., Mark Szporka (its CFO) and Randy Lubinsky (its CEO) materially overstated the Company's reported net income, falsely certified that its financial statements fairly presented its financial condition in accordance with generally accepted accounting principles ("GAAP"), and issued projections based on false financial reporting with no reasonable basis. According to Plaintiff, the truth came to light on March 15, 2006, when PainCare announced that it would restate its previously-reported financial results for the years ended December 31, 2000 through 2004, and for the nine months ended September 30, 2005, approximately the entire public life of the Company. The restatement reduced PainCare's reported net income by more than $36 million,

---

[1] This case has been pled as a class action, though it has yet to be certified as one. Accordingly the Court refers to "Plaintiff" throughout this Report, as at present there is only the Lead Plaintiff, The Employees' Retirement System of the Government of the Virgin Islands.

converting net income into net losses for these periods.  It is alleged that this announcement caused a 50% decline in the stock price.

This complaint, like the prior complaint, alleges that PainCare pursued an aggressive growth strategy from the outset in which it sought to acquire physician practices and surgical centers in order to "ultimately position PainCare as the world leader in pain management, minimally invasive spine surgery and orthopedic rehabilitation . . ." AC at ¶ ¶25-27.  During the Class Period, the Company completed 22 acquisitions, using a combination of stock and cash (See ¶29).

Plaintiff alleges that PainCare's reported financial results before and during the Class Period were not presented fairly and in accordance with GAAP in that the Company's "reported expenses were materially **understated** during the Class Period, and reported net income was materially **overstated** during the Class Period." AC at ¶3 (emphasis original).  Plaintiff asserts that by causing PainCare to issue false financial statements, Defendants enabled the Company to 1) acquire at least twenty companies using artificially inflated common stock and cash received from private placements and credit facilities as consideration; 2) enter into private placement deals whereby the Company received over $33 million in gross proceeds; 3) establish a $30 million credit facility on more favorable terms than it would have secured "if the truth were known"; and 4) complete a public offering of 8 million shares of its common stock whereby it reaped approximately $15.2 million in gross proceeds. AC at ¶ 4.

The investing public "remained unaware of the accounting improprieties" until an announcement on March 15, 2006, by PainCare that, following discussions with the SEC, it intended to restate its financial results for the years 2000 through 2004, and for the first three quarters of 2005.

(AC at ¶¶ 5, 73). In a Form 8-K filed the same day, PainCare identified three matters of questionable accounting under discussion with the SEC staff:

(a) its existing stock option plans;

(b) practice and surgery center acquisitions, including values recorded for acquired intangible assets and calculation of the consideration; and

(c) expenses relating to derivative financial instruments issued in connection with several private placements. (See AC at ¶ 74).

On June 1, 2006, PainCare issued restated financial results that lowered net income by approximately $12.7 million for 2003; $7.2 million for 2004; and $16.3 million for the first three quarters of 2005 (*Id.* at ¶5, see also ¶76),[2] and acknowledged that its internal controls were inadequate. (¶ 78). In response to the announcement, the Company's stock fell $0.36 per share or 13%, to close on March 16, 2006 at $2.50 per share on unusually heavy trading volume. During the next three trading days, shares of the Company's stock continued to fall, reaching as low as $1.41 on March 21, 2006. (¶6).

Plaintiff asserts that the Defendants knew or recklessly disregarded the fact that there were accounting errors and weaknesses in the internal controls. See, *e.g.,* ¶¶ 34, 36, 38, 45, 48.

The AC asserts that Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 and that Lubinsky and Szporka are also liable as control persons under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

---

[2]This is a combined loss. The AC alleges that net income, as originally reported, was $2,273,178 for the first quarter in 2005, and restated net income for that quarter was a loss of $27,763,632. In the second quarter of 2005, the restated net income increased from $3,364,190 to $11,110,828. The restated net income also increased in the third quarter of 2005 – from $3,473,897 to $9,368,869. (AC at ¶76).

## *LEGAL STANDARDS*

On a motion to dismiss, this Court accepts as true all well-pleaded allegations of the Second Consolidated Class Action Complaint, and construes all reasonable inferences therein in the light most favorable to the plaintiff. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 n.2 (11th Cir. 2001) (citing *Byrant v. Avado Brands, Inc*., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). While the general rule mandates a court limit its inquiry to the four corners of the complaint when ruling on a motion to dismiss, an exception is granted in securities fraud cases to allow a court to take judicial notice (for the purposes of determining what statements the documents contain and not to prove the truth of the documents contents) of relevant public documents required to be filed with the Securities and Exchange Commission ("SEC"), and actually filed. *In re Sunterra Corp. Sec. Litig*., 199 F.Supp.2d 1308, 1319 (M.D. Fla. 2002) (quoting *Bryant*, 187 F.3d at 1278).

Previously, the general standard provided that a complaint should not be dismissed for failure to state a claim unless it appeared beyond doubt that plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Recently, however, the Supreme Court has adopted a somewhat heightened standard requiring a plaintiff to supply more than just any conceivable set of facts tending to support a claim, but "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1973, 167 L.Ed. 2d 929 (2007). In order to survive a motion to dismiss in a securities fraud case, a plaintiff must also satisfy the requirements of Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting fraud be stated with particularity. *In re: Recoton Corp. Sec. Litig*., 358 F.Supp.2d 1130, 1138 (M.D. Fla. 2005). A plaintiff satisfies Rule 9(b)'s particularity requirement for fraud when the complaint sets forth "(1) precisely what documents or oral representations were made, and (2) the time

and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id*. (quoting *Ziemba,* 256 F.3d at 1202) (itself quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1371 (11th Cir. 1997)). "A sufficient level of factual support for a [10b] claim may be found where the circumstances of the fraud are pled in detail. 'This means the who, what, when where, and how: the first paragraph of any newspaper story.'" *Garfield v. NDC Health Corp*., 466 F.3d 1255, 1262 (11th Cir. 2006) (internal citations omitted).

In addition to the particularity pleading requirements required of the plaintiff under Rule 9(b), the Private Securities Litigation Reform Act of 1995 (herein "PSLRA"), codified at 15 U.S.C. § 78u-4(b), further heightens the pleading burden by requiring that the complaint contain: (1) factual specificity as to the alleged misleading or omitted statements[3] and (2) particular facts raising a "strong inference" that a defendant acted with "the required state of mind."[4]  Failure to meet either of these provisions mandates the dismissal of the complaint on the motion by any defendant.[5]

With respect to the "required state of mind," this Court has noted that:

---

[3]Section 78u-4(b)(1) states: In any private action arising under this title in which the plaintiff alleges that the defendant - (A) made an untrue statement of a material fact; or (B) omitted to state a material fact in order to make the statements made, in light of the circumstances in which they were made, not misleading; the complaint shall specify each statement to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

[4]Section 78(u-4(b)(2) states: In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

[5]The PSLRA mandates that "in any private action arising under this chapter, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met." 15 U.S.C. § 78y-4(b)(3)(A).

> The Eleventh Circuit has held that scienter is satisfied by a showing that the defendant had "an intent to deceive manipulate or defraud" or that the defendant "acted with a severely reckless state of mind." *Bryant*, 187 F.3d at 1282-83. Severe recklessness is " 'limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it.' " *Id*. at 1282 n. 18 (quoting *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989)). While averments of motive and opportunity to commit fraud "may be relevant to a showing of severe recklessness . . . such allegations, without more, are not sufficient to demonstrate the requisite scienter." *Id*. at 1285. Further, the Eleventh Circuit has recently clarified that "scienter must be found with respect to each defendant and with respect to each alleged violation of the statute." *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004).

*In re Recoton*, 358 F.Supp.2d 1130 at 1139.

The United States Supreme Court has recently clarified to some extent the task of the court in evaluating an allegation of scienter.  In *Tellabs, Inc., supra*, the Court held that as "[t]he strength of an inference cannot be decided in a vacuum" but is "inherently comparative," a court must engage in a comparative evaluation in determining whether a strong inference of scienter has been pled.  127 S.Ct. at 2510.  A "strong inference" is one that is "cogent and compelling, thus strong in light of other explanations."  *Id.*  District courts are directed to weigh the alleged inferences through a three-step process: 1) accepting all factual allegations as true; 2) "holistically" evaluating the complaint in its entirety to determine whether *all* of the facts give rise to a strong inference of scienter, 3) taking into account plausible opposing inferences of non-fraudulent intent.  *Id.* at 2511.  A complaint will survive only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 2503.  As summarized by the Supreme Court:

> A plaintiff alleging fraud in a § 10(b) action, we hold today, must plead facts rendering an inference of scienter *at least as likely* as any plausible opposing inference. At trial, she must then prove her case by a "preponderance of the evidence." Stated otherwise,

-7-

> she must demonstrate that it is more likely than not that the defendant acted with scienter. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 390, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,, 127 S.Ct. 2499, 2513 (2007) (emphasis original).

In addition to pleading fraud with particularity and scienter sufficiently, Plaintiff also has the burden under the Exchange Act of showing that the misrepresentations alleged "caused the loss for which plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). As stated in *Recoton:*

> As explained by the Eleventh Circuit, "loss causation describes 'the link between the defendant's misconduct and the plaintiff's economic loss.' " *Robbins,* 116 F.3d at 1447 (quoting *Rousseff v. E.F. Hutton Co.*, 843 F.2d 1326, 1329 n. 2 (11th Cir. 1988)). A plaintiff ultimately proves loss causation by showing "that the untruth was in some reasonably direct, or proximate, way responsible for his loss." *Id.* (citation and internal quotation omitted). Although a "plaintiff need not show that the defendant's act was the sole and exclusive cause of the injury," the plaintiff "must show that the misrepresentation touches upon the reason for the investment's decline in value." *Id.* (internal quotations omitted). Allegations of artificial price inflation alone do not satisfy the loss causation requirement. *Id.* at 1448.

358 F. Supp. 2d at 1152.

### *ISSUES AND ANALYSIS*

The motion asserts that the Amended Complaint fails to state a cause of action in that it fails to allege the misrepresentations with sufficient particularity, fails to adequately allege scienter, transaction causation or loss causation, and fails to state a claim under Section 20(a), because of failure to state a claim under Section 10(b). After a careful review in accordance with the standards set forth above, the Court is not persuaded and **respectfully recommends** that the motion of Defendants be **denied.**

*Particularity*

The AC does not add new claims, but rather clarifies the existing claims, in accordance with the Court's prior rulings.[6] Previously, the Court found that Plaintiff had failed to plead the fraud with specificity, noting that Plaintiff alleged only "that because the financial statements for the years 2000 through the first three quarters of 2005 were restated, therefore the 15 or so public filings and 50 press releases issued during that time period were erroneous and thus, fraudulent misrepresentations. " (Doc. No. 101 at 8). The Court rejected what it termed a "whole-cloth approach" as inconsistent with the required "who, what, when, where, and how" of Rule 9(b). *Id.*

The Amended Complaint, however, Plaintiff adds the missing details, noting *what* part of the press release or statement was deemed misleading, *why* it was so, and supplying *how* this effected the Company's financials, including how the market reacted to the representations (*see* ¶¶ 34-43, 45-49, 51-52, 56-57, 60-61, 63-64, 67-72). Plaintiff asserts not just a bare allegation that the financial projections made by the Company were false and misleading when made, but asserts that Defendants knew that the earnings were materially misstated and that the projected earnings were "dependent on improper accounting." ¶ 43, *see also* 53, 72, 93, 94 and 146. The new allegations are more than "conclusory boilerplate" assertions, as characterized by Defendants, and therefore satisfy the pleading requirements.[7]

*Scienter*

As noted above, the Supreme Court has recently clarified the process to be undertaken in evaluating whether scienter has been sufficiently pled. Simply put, the District Court weighs the

---

[6]The prior Report and Recommendation set forth the claims in greater detail, not repeated here.

[7]The Court also finds that these allegations do not merely plead "fraud by hindsight." As noted above, Plaintiff asserts that the Defendants knew that the statements were false and misleading when made. *See also* ¶ 157.

competing inferences by accepting all factual allegations as true, "holistically" evaluating the complaint in its entirety to determine whether *all* of the facts give rise to a strong inference of scienter, taking into account plausible opposing inferences of non-fraudulent intent. 127 S.Ct. at 2511. A complaint will survive only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 2503.

Applied here, Plaintiff asserts that the totality of the allegations support an inference that Defendants acted with scienter. While the Court does not find the inference overwhelming, accepting all factual allegations as true, and evaluating competing inferences of non-fraudulent intent, the Court finds that the inference of scienter is equal to the inference of non-fraudulent intent, and therefore concludes that scienter has been adequately pled.

Plaintiff asserts that scienter is evident by: 1) the sheer magnitude of the restatement and the admitted GAAP violations; 2) the push for massive growth by acquisitions; 3) the Company's false rationalization for the Restatement; combined with a showing of the Individual Defendants' scienter, evidenced by knowledge of improper accounting methods prior the restatement; bonuses tied to the inflated earnings, and their background and positions of control of the Company. The Court acknowledges that the majority of these arguments were previously made by Plaintiff and rejected by this Court as insufficient, with respect to the prior complaint. That decision, however, was made prior to the Supreme Court's decision in *Tellabs*[8] and addressed a complaint that was deemed too vague to meet the specificity requirement, let alone establish a cogent inference of scienter. The instant

---

[8] As Plaintiff notes in its supplemental brief, prior to *Tellabs,* "strong inference" was interpreted to mean necessarily more compelling than any inference of no scienter, but *Tellabs* "relaxed the ordinary rule under which a tie goes to the defendant." Doc. No. 118 at 4, citing Justice Scalia's concurrence in *Tellabs.*

complaint provides a much greater level of detail and, with a clearer picture of the asserted wrongdoing, the Court evaluates this pleading holistically, under the *Tellabs* standard.

*PainCare*

The AC alleges and Defendants admit that "mistakes were made and there was a breakdown in internal controls" (Doc. No. 119, p. 5) that led to the Company issuing a Restatement that covered virtually its entire public life. Defendants contend, however, that "violations of GAAP *on their own* are insufficient to establish scienter" (Doc. No. 109, citing *Sunterra,* 199 F. Supp.2d at 1333, emphasis added) as are "restatements, *in and of themselves*," (emphasis supplied). This is true, but *Tellabs* instructs the Court to look *cumulatively* at the allegations. Thus, while individual allegations may be insufficient when viewed singularly, the Court must consider the weight of *all* the inferences arising from all of the facts well pled. The sheer magnitude of the restatement is relevant to this analysis. *See In re Microstrategy, Inc. Sec. Litig.,* 115 F.Supp.2d 620, 635-36 (E.D. Va. 2000) (scienter allegations adequate where complaint detailed "the magnitude of the restated financials and the pervasiveness and repetitiveness of . . . GAAP violations; the simplicity of the accounting principles violated in this case; and the importance of the contracts involved."); *In re Catalina Marketing Corp. Sec. Litig.,* 390 F. Supp.2d 1110 (M.D. Fla. 2005) (overstatement of income of 43% supports an inference); and *Zuckerman v. Smart Choice Auto Group, Inc.,* 2000 WL 33996254 (M.D. Fla. August 29, 2000).

The Court considers, too, the growth strategy employed by the Company. Plaintiff alleges (and this Court must accept as true for the purposes of this motion) that Defendants manipulated the financials in order to artificially inflate its stock, which served to fuel more growth as the Company acquired more practices with artificially inflated stock and cash obtained from the sale of artificially

inflated shares. This complaint asserts that members of the Class were damaged by purchasing the stock at the false price. AC ¶6. Thus, the AC supports an inference that the unbridled growth strategy employed by the Company was essentially nothing more than a house of cards, built on the foundation of misrepresentations to stockholders in order to inflate the stock and cash available, to fuel even more growth. Defendants offer no competing inference on this particular point.

The AC alleges that scienter is also evidenced by Defendants' false rationalization for the restatements, claiming that they were due to "evolving interpretation[s] of certain accounting rules" when, in fact, the rules were well-established. ¶ 88. *See also* ¶¶ 89-94; 122, 126, 144. While Defendants assert that the "rationalization" was not, in fact, false, the Court must accept the allegation, as pled, for present purposes. Even so, the Court agrees with Defendants that this allegation-- that a false reason was provided-- does not equate with fraud, absent an allegation that the false reason was *knowingly* false when made (an allegation not fairly inferred from the AC). At best, Plaintiff has alleged that the accounting was wrong, and the reason provided for the error was also wrong. Nonetheless, while the falsity of the reason itself is not *per se* proof of fraud, the fact that the Company gave a false reason for the accounting errors *immediately after* acknowledging the accounting errors leading to the massive restatement supports an inference of recklessness. As PainCare points out in its papers, the restatement followed an internal investigation prompted by an SEC inquiry. Under such scrutiny, any company exercising reasonable diligence is interested not only in what went wrong, but *why* it went wrong, so as not to repeat the error. To the extent the reason offered to the public was not true, one can infer that the Company had a reason not to delve too deeply in presenting its *mea culpa* to the public. While fecklessness is not recklessness, when truly falling on your sword, you aim for the heart.

The competing inferences offered by Defendant are, simply, that the accounting errors were mistakes and there was a breakdown in internal controls (Doc. No. 119). PainCare points to several facts that it feels negates any nefarious intent, such as the fact that the Company's financials were reviewed and certified by an independent auditor, the accounting methodology was disclosed at all times, and the lack of traditional "red flags" such as confidential witnesses or insider trading. While these circumstances show that the Company has potential defenses to the claim, "[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the 'smoking-gun' genre, or even 'the most plausible of competing inferences' [internal citation omitted]." *Tellabs,* 127 S.Ct. at 2510. Here, while it is *plausible* that the Defendants truly did not know that they were using inappropriate accounting methods and had a good faith basis to blindly pursue its ambitious acquisition strategy, it is equally *plausible* that Defendants took great care *not* to "know" that the stock was artificially inflated and that there were reasons to slow the train down. The Company's implicit assertion that a Company can ignore the elephant in the room, as long as no one *told* them it was there does not negate recklessness. In sum, the above supports a cogent inference that the Company was, at a minimum, severely reckless in the financial representations made to investors, as detailed in the AC.

*Individual Defendants*

For similar reasons, the Court finds scienter has been adequately pled with respect to the CEO and the CFO. The AC details the Individual Defendants' positions with the Company (¶¶ 143-150), their access to insider information (¶ 15), experience and accounting backgrounds, by which they knew of the GAAP standards (¶ 145), that their bonuses were tied to the Company's earnings (¶ 148), and, significantly, that they knew of the GAAP violations prior to informing the public (¶ 150). The inference that these individuals knew of the falsity of the financial misrepresentations when they were

made is at least as cogent and compelling as the inference that they were unaware of anything amiss in an area clearly within their expertise and authority.

The Court finds scienter has been adequately pled as to all Defendants.

*Causation*

As noted by the undersigned in earlier Report:  A federal securities fraud claim is actionable "only where [] plaintiffs adequately allege and prove the traditional elements of causation and loss." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

> '[T]o establish loss causation, a plaintiff must allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.' *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (internal quotations and citation omitted). . . .
>
> In *Dura,* the U.S. Supreme Court held that loss causation may not be established by simply alleging a stock was purchased at an artificially inflated price. *Dura Pharms., Inc.,* 125 S.Ct. at 1631-32, 1634. Rather, to sufficiently plead loss causation, a plaintiff must allege a disclosure or revelation of truth about a defendant's prior misstatement or omission that is in some way connected with a stock price drop. *Id*. at 1634 (motion to dismiss granted based on plaintiffs' failure to plead loss causation where plaintiffs failed to allege that stock prices fell after 'the truth became known').

*In re Teco Energy, Inc. Securities Litigation*, 2006 WL 845161, *2 (M.D. Fla. March 30, 2006).

Here, Defendants assert an absence of allegations sufficient to establish transaction causation (reliance) or loss causation.  Plaintiff has adequately pled a "fraud on the market" theory. AC at ¶¶ 155-156; *Basic, Inc. v. Levinson*, 485 U.S. 224, 241-47 (1988).  Defendants' argument that they cannot *prove* their allegations is premature at this stage.

As for transaction causation, it, too, is adequately pled. According to the AC, Defendants' actions "caused the price of the Company's stock to be artificially inflated during the Class Period,"

-14-

and "[w]hen defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, PainCare's common stock fell precipitously as the prior artificial inflation came out of PainCare's common stock price," and this decline "was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market." ¶¶ 152-53; ¶¶ 6, 75, 165. Plaintiff has pled more than a mere temporal relationship between the alleged fraud and the losses.

Based on the foregoing, the Court finds that Plaintiff has stated a cause of action that Defendants violated Section 10(b) of the Securities Exchange Act of 1934.

*Control Person Liability*

As Defendants' sole basis to dismiss the control person claim under Section 20(a) is a failure to allege primary liability under Section10(b), the Court's determination that a cause of action under 10(b) has been adequately pled moots this contention.

## CONCLUSION

It is respectfully recommended that the motion to dismiss be **denied,** and the Defendants be made to answer the AC within 11 days of any Order adopting this Report.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 16 , 2007.

*David A. Baker*

    DAVID A. BAKER
    UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy