# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

-----------------------------------------------------x
                                            :
IN RE PAINCARE HOLDINGS, INC.               :      CASE NO. 6:06-cv-362-Orl-28DAB
SECURITIES LITIGATION                       :
                                            :
This Document relates to:                   :
All Actions                                 :      ELECTRONICALLY FILED
                                            :
-----------------------------------------------------x

## MOTION FOR FINAL
## APPROVAL OF PROPOSED SETTLEMENT
## AND INCORPORATED MEMORANDUM OF LAW

**BARRACK, RODOS & BACINE**          **WILLIAMS SCHIFINO MANGIONE**
Daniel E. Bacine                       **& STEADY P.A.**
Mark R. Rosen                         William J. Schifino, Jr.
Robert A. Hoffman                     Florida Bar No. 564338
Beth T. Seltzer                       Daniel P. Dietrich
3300 Two Commerce Square              Florida Bar No. 934461
2001 Market Street                    One Tampa City Center, Suite 3200
Philadelphia, PA  19103               201 North Franklin Street
                                      Tampa, FL  33602

**Lead Counsel for Lead Plaintiff**        **Liaison Counsel for Lead Plaintiff**
**and the Class**

Lead Plaintiff, Employees' Retirement System of the Government of the Virgin Islands, by its undersigned counsel, respectfully moves this Court for entry of an Order granting final approval of proposed settlement.

Additionally, Lead Plaintiff moves this Court for an Order  (1) certifying the Class for settlement purposes only; and (2) approving the proposed Plan of Allocation.

In support of its motion, Lead Plaintiff relies upon the incorporated memorandum of law, as well as the Declaration of Mark R. Rosen and Exhibits attached thereto.

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Lead Plaintiff, Employees' Retirement System of the Government of the Virgin Islands ("Lead Plaintiff"), respectfully submits this memorandum of law in support of its motion for entry of an Order (a) certifying the Class for settlement purposes; (b) granting final approval of the settlement between Lead Plaintiff and defendants PainCare; PainCare's chief executive officer, Randy Lubinsky, and PainCare's chief financial officer, Mark Szporka (collectively the "Individual Defendants").  This proposed settlement will resolve all securities claims against PainCare and the Individual Defendants (collectively, the "Defendants").

As explained more fully herein, Lead Plaintiff and Lead Counsel have succeed in obtaining a recovery for the benefit of the Class in the amount of $2,000,000 in cash, plus interest, as embodied in the Stipulation and Agreement of Settlement (the "Settlement") filed with the Court on May 7, 2008.

## II.     DESCRIPTION OF THE LITIGATION

This case is brought on behalf of all persons who purchased or otherwise acquired common stock of PainCare between March 24, 2003 and March 15, 2006, inclusive ("Settlement Class Period"), and were damaged thereby, excluding Defendants, the officers and directors of PainCare during all or any portion of such period, members of their immediate families, their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had controlling interest.  Also excluded from the Settlement Class are any putative Settlement Class members who exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in the Settlement Notice.

Beginning on March 21, 2006 eleven class actions alleging violations of federal securities laws by Defendants were filed in this Court.  By Order dated July 28, 2006, the Court consolidated all eleven cases under the above caption (collectively, the "Action").  In the same Order, the Court also appointed the Employees' Retirement System of the Government of the Virgin Islands as Lead Plaintiff, approved its selection of Barrack Rodos & Bacine as Lead Counsel, and Williams, Schifino, Magione & Steady, P.A. as Liaison Counsel.

On September 11, 2006, Lead Plaintiff filed a Consolidated Class Action Complaint alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  On October 20, 2006, Defendants moved to dismiss the Complaint and on November 13, 2006, Lead Plaintiff opposed Defendants' motion.  By Order dated April 25, 2007, the Court granted Defendants' motion to dismiss.

On May 23, 2007, Lead Plaintiff filed and served an Amended Consolidated Class

Action Complaint (the "Amended Complaint").  On June 7, 2007, Defendants moved to

dismiss the Amended Complaint and on June 21, 2007, Lead Plaintiff opposed the motion.

By Order dated February 7, 2008, the Court denied Defendants' motion to dismiss the

Amended Complaint.

In the Amended Complaint, Lead Plaintiff alleged that during the Class Period,

PainCare, which was founded in 2000, rapidly expanded its business through acquisitions of

companies.  Before and during the Class Period, PainCare paid for the acquired companies

with a combination of cash and PainCare common stock.  PainCare's public statements, press

releases and filings with the Securities and Exchange Commission ("SEC") touted the

Company's rapid growth and its financial results as an indicator of the successful

implementation of its acquisition strategy.

Additionally, Lead Plaintiff alleged that PainCare's reported financial results before

and during the Class Period were not presented fairly and in accordance with generally

accepted accounting principles.  Plaintiffs further alleged that the investing public was

unaware of PainCare's purported accounting improprieties until March 15, 2005, when the

Company announced that it was restating its financial results for the years 2000 through

2004, and for the first three quarters of 2005.  The restatement lowered net income by

approximately $12.7 million for 2003; approximately $7.2 million for 2004; and

approximately $16.3 million for the first three quarters of 2005.

Throughout the pendency of the Action, Lead Counsel and Defendants' counsel

engaged in settlement discussions.  As a result of those arm's length discussions and

counsel's analysis of the evidence and the applicable law, including the financial resources of

PainCare, on March 25, 2008, counsel for Lead Plaintiff and Defendants entered into a memorandum of understanding, which sets forth the essential terms of an agreement to settle the Action. On May 7, 2008, Lead Plaintiff filed the Stipulation and Agreement of Settlement with the Court. The Stipulation sets forth, in detail, all of the terms of the Settlement. In light of all of the relevant considerations, Lead Plaintiff and Lead Counsel respectfully request that this Court should certify the Class for settlement purposes and grant final approval of the Settlement and the Plan of Allocation.[1]

## III.  THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

This Court has already preliminarily certified the Settlement Class in the Preliminary Approval Order signed May 16, 2008. Courts typically certify classes for the purpose of implementing settlements. *See, e.g., Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006) ("A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue") (internal quotations omitted).

Lead Plaintiff moves this Court for conditional certification of the following nationwide Settlement Class:

> [A]ll persons who purchased or otherwise acquired common stock of PainCare between March 24, 2003 and March 15, 2006, inclusive ("Settlement Class Period"), and were damaged thereby, excluding Defendants, the officers and directors of PainCare during all or any portion of such period, members of their immediate families, their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Settlement Class are any

---

[1] Lead Counsel is filing contemporaneously herewith supporting declarations of Lead Counsel and Liaison Counsel, and a memorandum of law in support of their motion for an award of attorneys' fees and reimbursement of expenses.

putative Settlement Class Members who exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in the Settlement Notice.

*See* ¶ 1.ff of the Stipulation of Settlement.  In addition, Defendants have consented to the certification of the Settlement Class.  *See* Stipulation of Settlement at ¶2.

The Supreme Court has determined that while the requirements of Rule 23 must be met in order to certify a settlement class,  a "district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  As set forth below, the proposed Settlement Class meets the requirements of Fed. R. Civ. P. 23.

**A.     The Proposed Class Satisfies the Requirements of Rule 23(a)**

**1.     The Proposed Settlement Class Meets the Numerosity Requirements**

The proposed Settlement Class meets the numerosity requirement of Rule 23(a)(1). "The numerosity requirement is satisfied if the proposed class is so numerous that joinder of all members is impracticable." *In re Theragenics Corp. Sec. Litig.,* 205 F.R.D. 687, 694 (N.D. Ga. 2002).  This Court has stated that "[t]here is no definite standard as to whether there are sufficient class members and whether the members are of sufficient character to satisfy this requirement." *In re Recoton Corp. Sec. Litig.,* No. 248 F.R.D. 606, 617 at *11 (2006) (plaintiff need not present evidence of the amount of shareholders who purchased stock during the class period).  "Moreover, the numerosity requirement is generally assumed to have been met in class action suits involving nationally traded securities." *Id.* (internal quotations omitted).  Here, although it is unknown exactly how many class members exist,

5

during the Class Period PainCare's common stock was traded nationally on the American

Stock Exchange and therefore, a presumption applies that the numerosity requirement is met.

> **2.    Central Issues of Law and Fact Common to All Class
> Members Predominate over Any Individual Issues**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."

Commonality is met when there is at least one issue affecting a significant number of

proposed class members. *Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S. D. Fla.

2001). Every issue need not be common to the class "so long as the claims of the plaintiffs

and other class members are based on the same legal or remedial theory." *Access Now, Inc.*

*v. Ambulatory Surgery Ctr. Group, Ltd.,* 197 F.R.D. 522, 526 n. 2 (S.D. Fla. 2000). Here,

numerous common questions exist with respect to the proposed Settlement Class, including:

(a)    Whether Defendants' conduct violated the federal securities laws;

(b)    Whether Defendants omitted and/or misrepresented material facts;

(c)    Whether PainCare's financial results during the Class Period were
materially misstated;

(d)    Whether Defendants acted with scienter;

(e)    Whether Defendants engaged in perpetrating a manipulative and
deceptive device and/or scheme, and/or otherwise engaged in a
fraudulent course of conduct;

(f)    Whether the market prices of PainCare's common stock were
artificially inflated; and

(g)    The extent of damage sustained by Class members and the appropriate
measure of damages.

All of these questions are sufficient to show that Lead Plaintiff has been allegedly "affected commonly" by Defendants, and the commonality requirement has, therefore, been met. *See Dujanovic v. MortgageAmerica, Inc.,* 185 F.R.D. 660, 667 (N.D. Ala. 1999).

### 3.    Lead Plaintiff's Claims Are Typical of Class Members

Rule 23(a) also requires that "the claims…of the representative parties [be] typical of the claims…of the class." Fed. R. Civ. P. 23(a)(3).  "The typicality requirement of Rule 23 often is considered to require no more than that there exist no antagonism between the claims of the class representative and the other members of the class." *Dujanovic,* 185 F.R.D. at 667.  Here, there is nothing about Lead Plaintiff's claims that make them unique.  In fact, the interests of Lead Plaintiff are aligned with the proposed Settlement Class.  Lead Plaintiff, like other members of the proposed Settlement Class, purchased PainCare securities during the Class Period and were damaged thereby.  Where as here, the claims of the Proposed Class and the Lead Plaintiff "arise from the same event or pattern or practice," the typicality requirement is fulfilled.  *In re Recoton,* 248 F.R.D. at 619.  Thus, the Proposed Settlement Class meets the adequacy requirements.

### 4.    Lead Plaintiff and Lead Counsel Will Fairly and Adequately Represent the Class

Rule 23(a)(4) allows for class certification if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement involves two factors: (1) whether plaintiffs' counsel is qualified, experienced, and generally able to conduct the litigation, and (2) whether the class representatives have interests antagonistic to the class." *In re Recoton,* 248 F.R.D. at 620.  Lead Counsel has extensive experience in successfully prosecuting securities class actions and has frequently

appeared in major actions before courts throughout the country.  Barrack, Rodos & Bacine served as a lead counsel in, among other cases, the *Cendant* litigation resulting in settlements for the benefit of the class totaling almost $3.2 billion, which, at the time was the largest recovery ever achieved in class action securities litigation, as well as the *WorldCom* class action, which resulted in settlements of more than $6.1 billion.

Additionally, as set forth more fully above, Lead Plaintiff's interests are not antagonistic to those of the class and are clearly aligned with its members.  Lead Plaintiff's claims share substantially similar questions of law and fact with the claims of members of the proposed class, and their claims are typical of the claims of members of the class.

### 5.    The Proposed Class Meets the Rule 23(b)(3) Requirements

"Once the plaintiffs have established the four prerequisites of Rule 23(a), they must also satisfy at least one of the alternative requirements of Rule 23(b)." *In re Scientific-Atlanta, Inc. Sec. Litig.,* ___ F. Supp. 2d. ___, 2007 WL 2683729, at *13 (N.D. Ga. Sep. 7, 2007)  Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance requirement calls for an inquiry into whether the issues common to the class predominate over the individual issues relative to the respective class members.  The requirement does not set forth any distinct test for measuring the quantity or quality of the issues sufficient to meet the standard of predominance." *Dujanovic,* 185 F.R.D. at 668.

Here, common questions of law or fact predominate over individual questions because the central questions relating to Defendants' liability are common to the proposed class, *i.e.*, whether Defendants made material misrepresentations and/or omissions with the requisite scienter, which injured Lead Plaintiff and the class.  The alleged misrepresentations and misleading statements and omissions in this case were contained in Securities and Exchange Commission ("SEC") filings, press releases, and other public statements disseminated into the public market by Defendants.  Thus, the common questions of law or fact relating to the Defendants' liability exist as to all members of the Class and predominate over any questions affecting solely individual members.

The second requirement of Rule 23(b)(3) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" is also met in this instance.  "As it has been previously noted, '[i]t is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions.'" *In re Recoton,* 248 F.R.D. at 622 (quoting *In re AmerFirst Sec. Litig.,* 139 F.R.D. 423, 427 (S.D. Fla. 1991)).  Where, as here, the "proposed class satisfies the numerosity requirement, common questions predominate, and judicial economy favors class status" the superiority requirements of Rule 23(b)(3) have been met.  *Id.*

## IV.    THE NOTICE OF SETTLEMENT SATISFIES DUE PROCCESS REQUIREMENTS

Federal Rule of Civil Procedure 23(c)(2)(B) says, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Rule 23(e)(1) similarly says, "[t]he court must direct notice in a

reasonable manner to all class members who would be bound by the proposal."

Courts find a "substantial interest in assuring that the goals and requirements of the Federal Rules of Civil Procedure concerning class actions be implemented to protect the due process rights of all parties." *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 552 (N.D. Ga. 1992).

> Receipt of actual notice by all class members is required neither by Rule 23 nor the Constitution.... What efforts are reasonable under the circumstances of the case rests initially in the sound discretion of the judge before whom the case is pending.... [T]he fact that notice to some class members must be given by publication is not necessarily fatal. In all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable.

*Id.* at 539.

"To satisfy due process, the notice must be sufficiently informative and give sufficient opportunity for response." *Borcea,* 238 F.R.D. at 677 (internal quotations and citations omitted).

The Notice here describes the nature, history, and status of the litigation; sets forth the definition of the Class; states the Class claims and issues; discloses the right of persons who fall within the definition of the Class to exclude themselves from the Class, as well as the deadline and procedure for doing so, and warns of the binding effect of the settlement approval proceedings on all persons who remain in the Class. The Notice also, *inter alia* (a) describes the Settlement; (b) sets forth the gross amount of the Settlement ($2,000,000.00) and the net proceeds that Lead Plaintiff proposes to distribute, both in the aggregate and on an average per-share basis; (c) explains the proposed Plan of Allocation; (d) provides contact information for Lead Plaintiff's counsel; and (e) summarizes the reasons why Lead Counsel

are seeking approval of the settlement.  The Notice also disclosed the date, time, and place of the final Settlement hearing, other relevant deadlines and the procedures for commenting on the Settlement and appearing at the hearing.  Accordingly, the contents of the Notice clearly satisfy the applicable requirements.

Moreover, the proposed notice plan was set up in order to reach as many of the potential proposed Settlement Class members as possible.  Beginning on June 17, 2008, the Claims Administrator, the accounting firm of Heffler, Radetich & Saitta LLP ("Heffler" or the "Claims Administrator"), in accordance with the Court's preliminary Approval Order, caused the approved Notice and Proof of Claim Forms to be mailed by first class mail, postage paid, to all identified Class Members.  *See* the Declaration of Edward J. Sincavage Declaration attached as Exhibit A to the Rosen Decl at ¶9.  On June 30, 2008, the approved Summary Notice was published in the *Wall Street Journal* and a press release was issued over *PR Newswire*.  Additionally, Heffler (a) received the records from the transfer agent identifying the record holders of PainCare common stock during the Class Period; (b) obtained a listing from Vickers' Stock Research Corporation identifying the institutions that held PainCare common stock during the Class Period; (c) provided a Notice and cover letter to brokerage firms and other nominees listed on Heffler's contact file, requesting that each nominee research their files for applicable class members and to inform HR&S of their results; (d) provided a Notice to each of the banks, entities and other institutions in Heffler's institution database; and (e) contacted the Depository Trust Company, to obtain a listing of Nominees that held PainCare common stock during the Class Period.

These actions meet the requirements of Rule 23 of the Federal Rules of Civil

Procedure, which call for the "best notice practicable" under the circumstances, including individual notice to all members who can be identified through reasonable effort.  *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174 (1974) (emphasis omitted).   *Borcea,* 238 F.R.D. at 677 ("To satisfy due process, the notice must be sufficiently informative and give sufficient opportunity for response") (internal quotations omitted).  As these cases require, the Class has been given notice of the proposed Settlement and Plan of Allocation, as well as the rights of Class members, and the method and dates by which they can object to the Settlement and proposed plan, or opt-out of the Class.  Further, the Class has been advised of the date of the fairness hearing at which they will have an opportunity to be heard with respect to any objection raised.

## V.    THE PROPSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

The Settlement provides the Settlement Class with a recovery of $2,000,000, plus interest earned, from which any attorneys' fees and costs the Court might award would be paid.  The Plan of Allocation provides that the $2,000,000 plus interest, less taxes, and approved costs, Court awarded attorneys' fees and expenses (the "Net Settlement Fund") will be distributed to Class members who submit a timely, valid Proof of Claim ("Authorized Claimants").  Each Authorized Claimant will receive a share of the Net Settlement fund as calculated by the net number of PainCare common stock shares he or she purchased during the Class Period as compared to the total number of damaged shares for which the members of the Class submit claims.

The law favors and encourages settlements.  "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to

protracted litigation." *Borcea,* 238 F.R.D. at 671. Settlements of disputed claims, especially complex class actions, are clearly favored by the courts. *Ass'n For Disabled Am., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466 (S.D. Fla. 2002).

Lead Plaintiff and Lead Counsel respectfully submit that the proposed Settlement is fair, reasonable and adequate in light of the all of the relevant circumstances, including the weakened financial condition of the company.

A.    **The Role of the Court in Determining Whether to Approve a Class Action Settlement**

The Court should approve a Settlement that is fair, reasonable and adequate, and the Eleventh Circuit has expressly noted the discretion afforded the trial courts in assessing a proposed settlement, "[d]etermining the fairness of the settlement is left to the sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). As set forth below, this Settlement is fair, reasonable and adequate and here, the Settlement is the product of extensive arm's length negotiations, shows no signs of collusion and was reached by experienced counsel. In determining whether a given settlement is reasonable, the opinion of experienced counsel is entitled to considerable weight.

Similarly, the courts have noted the role of the assessment of counsel of the merits of a settlement. "A district court properly considers the judgment of experienced counsel when asked to approve a class action settlement." *Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007); *see also Wyatt v. Sawyer,* 105 F. Supp. 2d 1234, 1242 (M.D. Ala. 2000) ("In addressing whether a settlement is fair, adequate and reasonable, a court should also consider the judgment of experienced counsel."); *Behrens v. Wometco Enter., Inc.,* 118

F.R.D. 534, 539 (S.D. Fla. 1988) ("The court can rely upon the judgment of experienced counsel, and, absent fraud, should be hesitant to substitute its own judgment for that of counsel." (internal quotations omitted)).  Here, Counsel for both parties have substantial litigation experience in complex class actions.  And, because the Settlement represents an exercise of judgment by the negotiating parties, plaintiffs are not required to prove their entire case to demonstrate reasonableness, and courts should refrain from trying the case on the merits.  *See Behrens,* 118 F.R.D. at 539.

Not only was the Settlement reached through arm's length negotiations between experienced counsel, but it also was approved by a sophisticated Lead Plaintiff chosen pursuant to the "most adequate plaintiff" presumptions of the Private Securities Litigation Reform Act ("PSLRA") of 1995.   Under the PSLRA, a settlement reached under the supervision of an appropriately selected lead plaintiff is entitled to an even greater presumption of reasonableness.  As stated in the Senate Committee Report issued in support of the PSLRA "[i]nstitutions with large stakes in class actions have much the same interests as the plaintiff class generally; thus, courts could be more confident settlements negotiated under the supervision of institutional plaintiffs were fair and reasonable …" than is the case with settlements negotiated by unsupervised plaintiffs' attorneys.  1995 U.S.C.C.A.N. at 690 (internal quotations omitted).

### B.    The Settlement Satisfies the *Bennett* Factors

When determining whether a Settlement is fair, adequate and reasonable and warrants final approval, the Eleventh Circuit follows the factors set forth in *Bennett,* 737 F.2d 982 (the "*Bennett* factors").  In *Bennett,* homeowners of the City of Tamarac, Florida, filed a class

action complaint against the original developer of Tamarac. *Id.* at 984. The Eleventh Circuit affirmed the district court's decision that the Settlement reached between the parties was fair, reasonable and adequate, and should be granted final approval. *Id.* at 986. The court considered six factors, now referred to as the *Bennett* factors, to affirm the district court's decision. The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.* at 986. "In evaluating these considerations, the district court should not try the case on the merits." *Behrens,* 118 F.R.D. at 539.

As demonstrated below, the Settlement satisfies each of the six *Bennett* criteria. Indeed, in the judgment of Lead Counsel, the Settlement reflects an optimal outcome based on the claims in the Action, the damages that might be proven and collected, and the efficient manner in which the case was resolved – through which Class members will obtain the payment sooner rather than later.

### 1.    The Likelihood of Success at Trial and The Range of Possible Recovery Weigh In Favor of Approving the Settlement

"[T]he benefit this settlement provides to the class should be compared with the likely recovery for the class at trial." *Borcea,* 238 F.R.D. at 673. "This inquiry is premised upon balancing the probabilities, not assuring that the plaintiff class receives every benefit that might have been won after a full trial." *Elkins v. Equitable Life Ins. Co. of Iowa,* N. CivA96-296-Civ-T-17B, 1998 WL 133741, *25 (M.D. Fla. Jan. 27, 1998) (internal

quotations omitted).  "This question implicates the first three of the *Bennett* factors, which are closely related.  The Court's role is not to engage in a claim-by-claim, dollar by dollar evaluation, but to evaluate the proposed settlement in its totality."  *Borcea,* 238 F.R.D. at 673.  *See also Elkins,* 1998 WL 133741, at *25 ("It is not necessary to try the merits of the case in connection with the reviewing the settlement.  Thus, the Court can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.") (internal citations and quotations omitted).

Lead Counsel knows that despite the apparent strength of a case, there is no guarantee that it will prevail at trial.  And, even if Lead Plaintiff were to obtain a judgment on behalf of the Class, PainCare's financial condition makes it very questionable that it would be able to collect a judgment greater than the settlement amount.  Shortly before PainCare issued the restatement on June 1, 2006 that restated the Company's financial results for the years 2000 through 2004, and for the first three quarters of 2005, PainCare renewed its director and officer liability insurance.  Under these circumstances, Lead Counsel were advised by defendants that their liability insurer would be contesting coverage for any claim going beyond the $2,000,000 remaining on the Company's original, "wasting" policy.  Additionally, as of July 30, 2008, PainCare's stock was currently trading at *less than $0.04 per share* and the Company's *total market capitalization was $3.15 million*.  Under these circumstances, it is extremely unlikely that the defendants would have any coverage left by the time of trial or that the Company could pay any meaningful judgment that might be awarded.  Finally, Defendants' inability to pay more than the $2,000,000 makes this Settlement within the range of possible recovery at which the Settlement is fair, reasonable

and adequate.

Moreover, Lead Counsel believes that the case against the Defendants was strong but not without pitfalls.  The outcome of any litigation is never a certainty and there are significant risks in any lawsuit, especially where fraud is alleged.  In *In re GNC Shareholder Litigation,* 668 F. Supp. 450, 450 (W.D. Pa. 1987), the court stated:  "[w]e recognize plaintiffs' risks of establishing liability are significant where fraud is alleged. Elements such as scienter, materiality of misrepresentation and reliance by the class members often present significant barriers to recovery in securities fraud litigation."  While Lead Plaintiff believes that its case is meritorious, even if the matter were to proceed to trial, there are potential risks inherent in this litigation.  For example, Lead Plaintiff could have difficulty in proving that Defendants acted with scienter.  Additionally, a finder of fact may determine that plaintiffs were unable to prove loss causation, a hotly contested issue in this case.

### 2.    The Complexity, Expense and Duration of the Litigation Weighs in Favor of Approval

This is a securities fraud class action.  The action involves many complex questions of law as well as many questions involving alleged intricate and complex accounting violations.  Moreover, were this case to go to trial, it would be very time intensive and costly. When analyzing this factor in determining whether to approve a settlement, this Court stated:

> Trial of this case, which would likely last for many months, would require additional time and expense for consultation with additional experts (whom the jury might or might not believe), preparation of trial memoranda on various legal issues, and post-trial memoranda and appeals that would inevitably follow rulings on any final judgment, which would prolong the case for many years.  Judicial economy and public policy will be well served, because the settlement will result in an efficient and economical procedure for aggrieved Class Members to obtain appropriate relief.

*Elkins,* 1998 WL 133741, at *27 (M.D. Fla. Jan. 27, 1998).  Here, the avoidance of costly

discovery, consultation with experts and trial preparation weighs in favor of approving the

Settlement.

**3.       The Substance and Amount of Opposition to the Settlement**

"The settlement should be examined in light of the objections raised by Class

Members."  Moreover, out of the 16,519 notices mailed, and 419 proof of claims forms

completed and returned, only four class members have opted out, and only one member has

objected to the settlement.  *Elkins,* 1998 WL 133741, at *28.  "That there is only one

objection is compelling evidence that the attitude of the overwhelming percentage of the

class affected by the settlement does not oppose the settlement.  The attitude of the class thus

supports the reasonableness and appropriateness of the proposed settlement."  *Hill v. Art Rice

Realty Co.,* 66 F.R.D. 449, 456 (N.D. Ala. 1974), *aff'd mem.,* 511 F.2d 1400 (5th Cir. 1975);

*see Elkins,* 1998 WL 133741 (six objections out of a class of 109,000 considered "de

minimus").

Moreover, the sole objection filed on June 30, 2008 by Dennis James Reinke simply

does not reflect the realities of the situation.  After acknowledging that " no guarantees of

future stock prices are certain," Mr. Reinke asserts, without any evidence that PainCare

should be held responsible for at least 50% of the drop in its stock price.  What Mr. Reinke

fails to recognize, however, is that many factors may have played a role in the decline in the

company's stock price and that its current precarious financial condition certainly lessened

the likelihood that Class members could recovery the full extent of their damages, even

assuming that a significant portion of the decline in the value of the Company's stock was

18

attributable to defendants' wrongful conduct.

A plan of allocation is typically designed to compensate recognized losses without regard to the individual strengths and weaknesses of each particular claim, and this Plan of Allocation is not any different.  Indeed, given the discretion of courts to approve reasonable plans, courts have approved plans that provided the same rate of compensation to all class members, despite the fact that claims of some investors might be superior to claims of others. *See e.g., In re PaineWebber Ltd. P'ship Litig.,* 171 F.R.D. 104, 133-35 (S.D.N.Y. 1997).  It is simply unrealistic for members of a class to think that they will be able to recover all which was lost.

Moreover, the receipt of four requests for exclusion, one of which is invalid, from the proposed settlement, compared to 419 proof of claim forms already received by the Claims Administrator should not be read to "infer from them a general dissatisfaction with the proposed settlement."   *See also Elkins,* 1998 WL 133741, at *24 (exclusion requests by less than one-fifth of one percent of life insurance policies covered by the settlement was not evidence that the members of the class disapproved of the settlement).

### 4.    The Stage of Proceedings at Which the Settlement Was Achieved

The settlement was achieved after plaintiff devoted a significant amount of time and energy during the last one and one-half years overcoming Defendants' motions to dismiss. Throughout this time the litigation has been hard fought and ultimate success for the plaintiff and the class is far from assured.  On Defendants' first motion to dismiss the Court approved the report and recommendation of the Honorable David A. Baker that the motion be granted. After repleading, Magistrate Judge Baker recommended that the Court deny defendants'

motion to dismiss and sustain the Amended Complaint, which the District Court ultimately did. After the Court denied Defendants' motion to dismiss, Defendants became more willing to settle the Action. At the same time, Lead Plaintiff realized that the Company was financially unstable, with the Company's stock closing at $0.09 per share on the day that the Complaint was sustained. Additionally, the complexity of the accounting and financial issues presented by this case makes it probable that if the Settlement were not approved, the continued litigation would be both difficult and expensive.

In addition to falling into the range of possible settlements that warrants preliminary approval and dissemination of Notice to the Class, the facts above support a finding that the proposed Settlement is likely to be given final approval because the elements of the proposed Settlement comply with the *Bennett* requirements.

## VI.    THE PROPOSED PLAN OF ALLOCATION FOR THE SETTLEMENT FUND IS FAIR, REASONABLE AND ADEQUATE

Approval of a plan of allocation in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution must be fair, reasonable and adequate. *In re WorldCom Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The Plan of Allocation divides the recovery per share without calculating whether some shares, based on the purchase and/or sale dates were more damaged than others. In this regard, the proposed Plan of Allocation requires that that the Recognized Claim shall be the number of shares held as of the close of trading on March 15, 2006 or sold on or after March 16, 2006 and shares purchased between March 24, 2003 and March 15, 2006, inclusive and held after the close of trading on March 15, 2006 or sold on or after March 16, 2006. The

Notice also provides that there shall be no Recognized Claim with respect to shares of PainCare common stock purchased between March 24, 2003 and March 15, 2006 inclusive and sold prior to the close of trading on March 15, 2006, as PainCare did not disclose that it would be restating its financial statements until after the close of business on March 15, 2006. *See* Ex. 1 to the Declaration of Sincavage attached hereto as Exhibit A.

Courts have recognized that, under certain circumstances, an attempt to make precise calculations of each class member's loss could be counterproductive in allocating a settlement. "[A] formula for allocating the settlement fund in proportion to the precise harm suffered by each plaintiff would entail substantial costs as well as delay in the ultimate distribution of the settlement award." *Women in City Gov't United v. The City of New York,* No. 75 Civ. 2868 (MJL), 1989 WL 153059, at *5 (S.D.N.Y. Dec. 13, 1989). Here, Lead Counsel, in consultation with the Claims Administrator, determined that this Plan of Allocation would assure that all valid claimants received a portion of the Settlement without diminishing the Settlement Fund with the considerable costs and delays associated with making such unnecessary calculations in the claims administration process.

## VII.    CONCLUSION

For the forgoing reasons, Lead Plaintiff and Lead Counsel respectfully request that the Court enter an Order and Final Judgment certifying the Class for settlement purposes only and approving the Settlement, and further enter an Order approving the proposed Plan of Allocation.

Dated: August 1, 2008                                    Respectfully submitted,

By:_____/s/ Mark R. Rosen_____
**BARRACK, RODOS & BACINE**

Daniel E. Bacine
dbacine@barrack.com
Mark R. Rosen
mrosen@barrack.com
Robert A. Hoffman
rhoffman@barrack.com
Beth T. Seltzer
bseltzer@barrack.com
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Phone: (215) 963-0600
Fax:     (215) 963-0838
**Lead Counsel for Lead Plaintiff and the Class**

William J. Schifino Jr.
Florida Bar No. 564338
wschifino@wsmslaw.com
Daniel P. Dietrich
Florida Bar No. 934461
ddietrich@wsmslaw.com
Williams Schifino Mangione &
    Steady P.A.
One Tampa City Center, Suite 3200
201 North Franklin Street
Tampa, FL 33602
Phone: (813) 221-2626
Fax:     (813) 221-7335
**Liaison Counsel for Lead Plaintiff**

## CERTIFICATE OF GOOD FAITH

The defense endorses the settlement, and does not oppose the plan of distribution and other administrative aspects of the settlement.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic

filing to all CM/ECF participants.

I further certify that I will mail the foregoing document and the notice of electronic

filing by certified and first-class mail to:

> Mr. Dennis James Reinke
> 6642 S. Forest Avenue
> Tempe, Arizona 85283

Dated: August 1, 2008                                           /s/ Mark R. Rosen
                                                                Mark R. Rosen